IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**MINISTER-CLEVELAND WINSTON
KILGORE-BEY,**

       **Plaintiff,**

v.                                             **CIVIL ACTION NO.: 3:20-CV-76
(GROH)**

**KATHLEEN HAWK SAWYER,
Director of the Federal Bureau of Prisons,
R. HUDGINS, Warden,
KELLY MOORE, Medical Administrator,
JESSICA HOUCHIN, P.A. Nurse/EMTP,
MS. ALICIA WILSON, and
D. KEMPER, Counselor,**

       **Defendants.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On May 7, 2020, the *pro se* Plaintiff, a federal prisoner who was previously incarcerated[1] at FCI Gilmer, in Glenville, West Virginia, initiated this case by filing an action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), claiming his Constitutional rights were violated. ECF No. 1.[2]

---

[1] According to the Bureau of Prisons inmate locator website, Plaintiff was released from custody on January 8, 2021. https://www.bop.gov/inmateloc/.

[2] All CM/ECF numbers cited herein are from the instant case, 3:20-CV-76, unless otherwise noted.

1

The matter is now before the undersigned for a Report and Recommendation[3] to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the complaint be dismissed without prejudice.

## II.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff initiated this action alleging his rights were violated while he was incarcerated in the Northern District of West Virginia. Plaintiff's complaint alleges five claims for relief, that: (1) he has been diagnosed with sarcoidosis but was denied adequate medical assistance for "several major breathing complications at night and daytime" [ECF No. 1 at 9]; (2) Defendants conspired to deny Plaintiff adequate medical assistance, including a CPAP machine[4] [Id. at 9 – 10, 16]; (3) Defendants conspired to intentionally neglect Plaintiff's demonstrated medical need for a CPAP machine [Id. at 10 – 12, 16]; (4) during the COVID-19 pandemic the Defendants conspired to cause bodily harm to Plaintiff by denying Plaintiff access to a CPAP machine, and by housing prisoners transferred to the facility who were potentially positive for COVID-19 [Id. at 12 – 14, 16]; and (5) that Defendant Kemper both prevented Plaintiff from obtaining a CPAP breathing machine, and from filing an administrative remedy [Id. at 14 – 15, 17].

According to the complaint, Plaintiff had attempted to file a BP-8 by giving the

---

[3] Previously, on December 10, 2020, this Court entered a Report and Recommendation as to Plaintiff's request for injunctive relief. ECF No. 30. The District Court adopted the Report and Recommendation by order entered February 1, 2021. ECF No. 36. That order further struck the instant case from the Court's active docket. Id. However, on August 8, 2022, an amended order adopting the Report and Recommendation was entered. ECF No. 44. Through that amended order, the matter was reopened on the Court's active docket. Id.

[4] A Continuous Positive Airway Pressure (CPAP) machine delivers just enough air pressure to a mask to keep your upper airway passages open, preventing snoring and sleep apnea. https://www.mayoclinic.org/diseases-conditions/sleep-apnea/multimedia/continuous-positive-airway-pressure-cpap/img-20007977.

same to Defendant Kemper, whom Plaintiff asserts refused to file the grievance.  Id. at 4 – 5, 14 – 15.  Plaintiff makes no claim that he attempted to file a BP-9, BP-10, or BP-11. Id. at 4 – 5.

Plaintiff asserts he was injured as a result of Defendants' actions and experienced "daily headaches from not having a breathing machine, chest pains and anxiety during the day and lack of sleep from [his] breathing disorder." ECF No. 1 at 17.  He contends that he will "suffer lifelong head injuries from denial of proper medical care and breathing equipment." Id.  Further, he claims that his breathing and lung condition worsened, and that he suffered loss of sleep from headache pain.  Id.

For relief, Plaintiff asks for a total of $17,600,000.00 in actual damages, plus an additional $5,000,000.00 from each Defendant in punitive damages.  Id. at 17.

### III. LEGAL STANDARD

#### A. Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[5] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious

---

[5] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

"While the courts liberally construe *pro se* pleadings as a matter of course . . ., judges are not also required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417- 18 (7th Cir. 1993) (quoting Haines v. Kerner).

### B. Civil Rights Actions Under Bivens.

In Bivens, supra, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents. In FDIC v. Meyer, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a Bivens claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." Id. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 71 (2001).

Pursuant to Bivens, an individual federal agent may be found liable for actions "in excess of the authority delegated to him." 403 U.S. at 397. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). The Supreme Court further explained in Malesko:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring

4

> a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72. Further, in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims[6] [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

## IV. ANALYSIS

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and prejudice." McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)). Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and

---

[6] The Court notes that Bivens actions and § 1983 actions are both civil rights actions, and that Bivens actions regarding deprivation of civil rights are the federal counterpart to state actions authorized by 42 U.S.C. § 1983.

5

effective.'" Porter, 534 U.S. at 524.

Although generally, the exhaustion of administrative remedies should be raised by the defendant as an affirmative defense, if the failure to exhaust is apparent from the face of the complaint, the court has the authority under 28 U.S.C. § 1915 to dismiss the case sua sponte. Custis v. Davis, 851 F.3d 358, 361 (2017) ("A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies.")

Plaintiff concedes in his complaint that he did not exhaust his administrative remedies prior to filing the complaint. ECF No. 1 at 4. Plaintiff asserts that he gave an administrative remedy claim to Defendant Kemper who "took the request form and never turned or submitted my grievance for remedy". ECF No. 1 at 4. Plaintiff further contends that Kemper "failed to turn [his] administrative remedy form to the administrator for review of [his] request, thus, violating and hindering [Plaintiff's] right to receive medical care," and further that Kemper "never returned [Plaintiff's] administrative remedy BP-8 form to [Plaintiff]." Id. at 14. However, Plaintiff did not submit a copy of the BP-8 which he claims to have prepared and given to Defendant Kemper. Nor does Plaintiff claim that he made any other attempts to file a grievance or otherwise exhaust his administrative remedies.

As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the

> agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

The Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq.,[7] addresses the Bureau's Administrative Remedy Program, and directs inmates on the processes necessary to exhaust their administrative remedies by filing four mandatory[8] remedies: (1) an informal resolution (BP-8)[9]; (2) an administrative remedy at the facility (BP-9); (3) an appeal to the regional office (BP-10); and (4) a final appeal to the central office (BP-11). Failure to complete all four mandatory remedies is fatal to a claim based on the inmate's failure to exhaust administrative remedies.

---

[7] See https://www.bop.gov/policy/progstat/1330_018.pdf.

[8] Inmates who are incarcerated in Community Corrections Centers (CCCs) are not required to attempt informal resolution. BOP PS 1330.18 § 542.13.b.

[9] Many BOP institutional handbooks refer to the Informal Resolution Form as the BP-8 form. See:

1. FCI Waseca https://www.bop.gov/locations/institutions/was/was_ao_handbook_eng_031517.pdf;
2. FCI Oxford https://www.bop.gov/locations/institutions/oxf/OXF_aohandbook.pdf;
3. FPC Schuylkill https://www.bop.gov/locations/institutions/sch/SCH_camp_aohandbook.pdf;
4. USMC Springfield https://www.bop.gov/locations/institutions/spg/spg_ao_handbook050917.pdf;
5. USP Lewisburg https://www.bop.gov/locations/institutions/lew/LEW_smu_aohandbook.pdf;
6. FDC Tallahassee https://www.bop.gov/locations/institutions/tal/TAL_fdc_aohandbook.pdf;
7. FCI Fort Dix https://www.bop.gov/locations/institutions/ftd/FTD_aohandbook.pdf; and
8. USP/SCP McCreary https://www.bop.gov/locations/institutions/mcr/MCR_aohandbook.pdf.

The Fourth Circuit recognizes the process that inmates must follow to exhaust administrative remedies:

> The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15 (2009). First, an inmate normally must present his complaint informally to prison staff using a BP–8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison Warden using a BP–9 form. The BP–8 and BP–9 forms are linked. Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP–10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP–11 form. *Id.*

Hill v. Haynes, 380 F. App'x 268, 269, n.1 (4th Cir. 2010).

In his complaint Plaintiff concedes that although there is a grievance procedure in the institution where the events are alleged to have occurred, he did not complete the prisoner grievance procedure. ECF No. 1 at 4. Plaintiff alleges that he was prevented by Defendant Kemper from filing his BP-8 informal resolution with the institution. But as noted above, Plaintiff did not submit to this Court a copy of the BP-8 which he claims to have prepared and given to Defendant Kemper. Nor does Plaintiff present any other documentation to support his claim that he attempted to file the mandatory administrative remedies at any level of the process.

Further, Plaintiff does not contend that he was denied BP-9 administrative remedy form which is the mandatory next step to pursue an administrative remedy, or

that he was otherwise prevented from pursuing administrative remedies.[10]  Accordingly, exhaustion has not occurred, and this matter is premature.  This failure to exhaust administrative remedies is apparent on the face of the pleadings.

In Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 - 95 (1998), the Supreme Court wrote that "without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  See also Reinbold v. Evers, 187 F.3d 348, 359 n. 10 (4th Cir. 1999).  Because this court lacks jurisdiction, this court cannot entertain the petition.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

---

[10] Plaintiff is a frequent litigant in the federal courts.  He has initiated actions in the Courts of Appeal for the Fourth, Fifth, Ninth, and Eleventh Circuits.  Further, Plaintiff has initiated actions in the district courts for the District of Arizona, District of Columbia, Middle District of Florida, Western District of Louisiana, District of Maryland, Southern District of Mississippi, Middle District of Pennsylvania, District of South Carolina, Eastern District of Virginia, and the Northern District of West Virginia.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the pro se Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: December 15, 2022

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE